Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>HÉCTOR RIVERA VEGA<br><br>Peticionario | TA2026CE00293 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Criminal núm.:<br>B VI1993G0033<br>B LA1993G0113<br>B LA1993G0114<br><br>Por:<br>Inf. Art. 83 CP 1er Grado enm. a Inf. Art. 83 CP 2do Grado<br>Inf. Art. 4 LA<br>(2 cargos) |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de marzo de 2026.

El Tribunal de Primera Instancia ("TPI") denegó, por al menos la tercera vez, una solicitud de corrección de sentencia, a los fines de obtener la eliminación de una reincidencia habitual, la cual fue oportunamente estipulada por el peticionario antes de su juicio por jurado por delitos cometidos durante la vigencia del Código Penal de 1974. Por razón de que el peticionario está impedido de someter más de una moción a tales efectos, en ausencia de cambios fácticos o jurídicos que lo pudiesen justificar, y porque, de todas formas, en atención a la cláusula de reserva del Código Penal de 2012, nada de lo allí dispuesto le podría aplicar, se deniega la expedición del auto solicitado.

I.

En el 1994, luego de un juicio por jurado, el Sr. Héctor Rivera Vega (el "Peticionario") fue sentenciado a separación permanente de la sociedad mediante reclusión perpetua. Ello por su condición de

delincuente habitual, según estipulado por el propio Peticionario antes del juicio. No obstante, en diciembre de 2021, el TPI, descansando erróneamente en el "principio de favorabilidad", re-sentenció al Peticionario a 99 años de cárcel, ello al amparo de las disposiciones del Código Penal de 2012. Por razones desconocidas, este dictamen no fue objeto de revisión por el Departamento de Justicia.

A la misma vez, e inconforme con haber logrado esta reducción significativa de su sentencia, el Peticionario ha solicitado en múltiples ocasiones que se re-clasifique su reincidencia de "habitual" a "agravada", o que de otros modos se modifique su sentencia. Por ejemplo, en julio de 2018, solicitó al TPI, sin éxito, la "corrección" de su sentencia, a los fines de ser elegible para el beneficio de libertad bajo palabra. Véase Resolución de 29 de agosto de 2018 (KLCE201801123). Además, más recientemente, también sin éxito, solicitó "la eliminación de la reincidencia habitual" de su sentencia. Véase Resolución de 28 de febrero de 2024 (KLCE202400186).

Luego, en agosto de 2025, el Peticionario, una vez más, solicitó una modificación a su sentencia a los fines de que "se le enmiende el grado de reincidencia de habitual a agravada para atemperarla al derecho aplicable" (la "Moción"). Arguyó que, bajo lo dispuesto en el Código Penal de 2012, actualmente vigente, en su caso, no se cumplirían los "requisitos que activan la reincidencia habitual", por lo que debe ajustarse su sentencia a "reincidencia agravada". Sostuvo que debía aplicarse la ley vigente en atención al principio de favorabilidad del Artículo 4 del Código Penal de 2012. No explicó cómo ello afectaría el largo de su condena, la forma de cumplirla o los beneficios a los cuales podría ser elegible. El Ministerio Público se opuso a la Moción.

Surge del récord que, el 7 de noviembre de 2025, durante una vista argumentativa sobre la Moción, el TPI indicó que declararía con lugar la Moción, ello a raíz de que no se había incluido una cláusula de reserva en una enmienda, aprobada en el 2014, al Código Penal de 2012. Véase Ley 246-2014.

El 14 de noviembre, el Ministerio Público solicitó la reconsideración de lo actuado por el TPI. Explicó que la ley enmendatoria (Ley 246-2014) "no creó un nuevo código penal, mas bien enmendó el ya vigente", por lo que "no puede existir ausencia de 'cláusula de reserva', toda vez que ya existe" en el Código Penal de 2012. Se citó en apoyo una sentencia de este Tribunal, en la cual se atendió exactamente la misma controversia (*Pueblo v. Burgos Tañón*, Sentencia de 20 de junio de 2024, KLCE202400498, o "*Burgos Tañón*").

Mediante una Minuta firmada el 12 de enero de 2026 (transcrita el día 21 de enero; el "Dictamen"), el TPI declaró con lugar la moción de reconsideración del Ministerio Público. De conformidad, denegó la Moción, al razonar que el caso ante sí era un "retrato" de *Burgos Tañón*, el cual a su vez resolvió que no pueden aplicarse, a un condenado bajo el Código Penal de 1974, las disposiciones sobre reincidencia del actual Código Penal, según enmendado (incluido por la Ley 246-2014). Allí se reconoció que, por virtud de la cláusula de reserva del Código Penal de 2012, las disposiciones del mismo, independientemente hayan sido incorporadas mediante una enmienda posterior, sencillamente no aplican a los condenados bajo códigos penales anteriores. *Burgos Tañón* ("**dado que el Código Penal de 2012 no es aplicable al señor Burgos Tañón, es forzoso concluir que las disposiciones introducidas por la Ley Núm. 246-2014 tampoco le aplican**") (énfasis en el original).

El 26 de enero, el Peticionario solicitó la reconsideración del Dictamen, lo cual fue denegado por el TPI mediante una Resolución notificada el 5 de febrero.

Aún inconforme, el 23 de febrero, el Peticionario suscribió el recurso que nos ocupa. Reproduce lo planteado en la Moción; en esencia, que bajo el actual Código Penal, en su caso no aplicaría la reincidencia habitual, sino la agravada. Además, asevera que "el tiempo ya cumplido es más que suficiente" y que mantener la reincidencia habitual "constituye un castigo cruel e inusitado". Disponemos.

II.

Como cuestión de umbral, concluimos que el TPI estaba impedido de considerar los méritos de la Moción, pues ya el Peticionario había intentado, sin éxito, en más de una ocasión, que dicho foro modificara su sentencia. Adviértase que los asuntos ante la consideración de los tribunales deben encontrar, en algún momento, punto final. Salvo que estén presentes circunstancias muy extraordinarias, lo cual no ocurre aquí, la norma es que una parte está impedida de presentar los mismos argumentos, una y otra vez, para resolución judicial. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606-08 (2000); *Pueblo v. Román Martir*, 169 DPR 809, 823-24 (2007) (fundamentos no aducidos oportunamente se entienden renunciados).

En este caso, lo que se arguye en la Moción se pudo haber planteado en las mociones anteriores del Peticionario, sobre corrección de sentencia, presentadas en el 2018 y en el 2021. Al no alegarse la ocurrencia de algún evento, fáctico o jurídico, posterior a esas instancias, procedía que el TPI denegase de plano la Moción. Véase Regla 192.1(b) de las de Procedimiento Criminal, 34 LPRA, R. 192.1(b) (el TPI "no vendrá obligado a considerar otra moción

presentada por el mismo confinado para solicitar el mismo remedio").

Aun partiendo de la premisa de que procede la consideración de los méritos de la Moción, de todas formas, no procedería nuestra intervención con el Dictamen, pues el mismo es correcto.  Veamos.

La ley aplicable a unos hechos delictivos es aquella vigente al tiempo de cometerse el delito.  *Pueblo v. González*, 165 DPR 675, 684 (2005), citando a *Pueblo v. Rexach Benítez*, 130 DPR 273, 301 (1992).  No obstante, nuestro ordenamiento penal reconoce el principio de favorabilidad como excepción a la aplicación prospectiva de las leyes penales.  *Íd.*

Esencialmente, el principio de favorabilidad establece que cualquier acusado tiene derecho a recibir el beneficio provisto por una ley posterior, siempre y cuando ello resulte más favorable que lo dispuesto en la ley vigente al momento de la comisión de los hechos delictivos, sujeto a que, al aprobarse la nueva ley, no se haya dispuesto una cláusula de reserva.  Es decir, el principio de favorabilidad "ordena la aplicación retroactiva de leyes penales más favorables, lo que, a su vez, implica aplicar una ley cuya vigencia es posterior al acto u omisión realizado".  *González*, 165 DPR a la pág. 685.

En lo pertinente al caso de referencia, el Artículo 4 del Código Penal de 1974, 33 LPRA sec. 3004, incluía el principio de favorabilidad y disponía lo siguiente:

> Art. 4 Aplicación temporal de la Ley Penal.
> Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.

> Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.

> Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.

En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho.

Ahora bien, destacamos que a diferencia de la prohibición de leyes *ex post facto*, el principio de favorabilidad no tiene rango constitucional. En *González*, 165 DPR a la pág. 686, se consignó lo siguiente:

> […] la aplicación retroactiva de las leyes penales que favorezcan al acusado [queda] dentro de la prerrogativa total del legislador. Es por ello que al principio de favorabilidad corresponde a un acto de gracia legislativa cuyo origen es puramente estatutario. Conforme a lo anterior, el legislador tiene la potestad para establecer excepciones al principio de favorabilidad… **[d]icho de otra manera, un acusado no tiene un derecho constitucional a la aplicación retroactiva de leyes penales más favorables**. (Énfasis en el original).

Por consiguiente, la Asamblea Legislativa posee discreción para aplicar prospectiva o retroactivamente una nueva ley que sea beneficiosa para un acusado. Así pues, puede legislar para limitar el principio de favorabilidad, toda vez que no es absoluto. "[E]n nuestra jurisdicción, la aprobación de cláusulas de reserva opera como una limitación al principio de favorabilidad; principio que, al carecer de rango constitucional, está dentro de la prerrogativa absoluta del legislador." *González*, 165 DPR a la pág. 702. (Énfasis en el original suprimido).

En este caso, contrario a lo pretendido por el Peticionario, no le aplica lo dispuesto en el Código Penal de 2012, según enmendado, ello a raíz de la cláusula de reserva del mismo. Art. 303 de la Ley Núm. 146-2012, 33 LPRA 5412; *Pueblo v. González Ramos*, 165 DPR 675 (2005). Por tanto, prevalece la ley vigente al momento de los hechos, según la cual el Peticionario fue correctamente sentenciado como delincuente habitual. Resaltamos que, ante una situación análoga, ello también fue lo acertadamente resuelto por otro panel de este Tribunal en *Burgos Táñón*.[1]

---

[1] Tampoco procede el planteamiento del Peticionario a los efectos de que su sentencia constituye un castigo cruel e inusitado. Dicho planteamiento no fue

III.

Por los fundamentos que anteceden, se deniega la expedición del auto solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

elaborado ni desarrollado de forma alguna.  En cualquier caso, el Peticionario ni siquiera intenta explicar cómo la diferencia entre su situación actual (sentencia de 99 años, con reincidencia habitual) y lo pretendido (sentencia de 99 años, con reincidencia agravada) es de tal naturaleza que, en su situación particular, se configuraría un castigo cruel e inusitado.